IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JIMMY IVAN SANCHEZ LOPEZ, | |
| Petitioner, | **4:25CV3241** |
| vs. | |
| ROB JEFFREYS, Director of Nebraska Department of Correctional Services; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; PETER BERG, Field Office Director St. Paul Field Office of United States Immigration and Customs Enforcement; and ALLEN GILL, Field Office Director of Omaha Field Office of United States Immigration and Customs Enforcement; | **MEMORANDUM AND ORDER** |
| Respondents. | |

This matter is before the Court on Jimmy Ivan Sanchez Lopez's (hereinafter "Sanchez Lopez") Petition for a Writ of Habeas Corpus. (Filing No. 1). Sanchez Lopez, a noncitizen facing removal from the United States, is detained by Immigrations and Customs Enforcement. He alleges his detention is unlawful because he was denied a bond hearing despite being entitled to one. For the reasons set forth below, his petition will be granted in part, and the Court will order that he be given a bond hearing.

## BACKGROUND

Sanchez Lopez is a Salvadoran citizen. (Filing No. 1 at 1). He entered the United States near Eagle Pass, Texas without inspection in March 2012 and has lived in the country since then. (Filing No. 1 at 1-2; Filing No. 1-3 at 3). Sanchez Lopez and his partner, Rosa Melendez Martinez, have lived together in Grand Island, Nebraska since 2016. (Filing No. 1 at 11). They have three children together. (Filing No. 1 at 11). Two are United States citizens. (Filing No. 1 at 11).

In October 2025, Sanchez Lopez was arrested for driving under revocation. (Filing No. 1 at 2). After serving a thirty-day sentence at the Hall County Department of Corrections on that charge, Sanchez Lopez was arrested by Immigrations and Customs and Enforcement ("ICE"). (Filing No. 1 at 2).[1] ICE issued a Notice to Appear initiating removal proceedings against him the day of that arrest. (Filing No. 1 at 2; Filing No. 19 at 4). The Notice to Appear provided that Sanchez Lopez was subject to removal because he was "an alien present in the United States without being admitted or paroled[.]" (Filing No. 1-1 at 1). Sanchez Lopez was ordered to appear before an immigration judge in Omaha, Nebraska "to show why [he] should not be removed from the United States based on" that charge. (Filing No. 1-1 at 1). Around three weeks later, ICE transferred him to the Nebraska Department of Correctional Services facility in McCook, Nebraska, which is "currently the subject of an Inter-Governmental Service Agreement between NDCS, [the Department of Homeland Security], and ICE." (Filing No. 1 at 8; Filing No. 19 at 4).

Sanchez Lopez sought release on bond during the pendency of his removal proceedings in immigration court. (Filing No. 1-6). In an order dated November 18, 2025, the immigration judge denied Sanchez Lopez a custody redetermination because of the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). (Filing No. 1-7). The same day, Sanchez Lopez filed an application for asylum, withholding of removal, and relief under the Convention Against Torture. (Filing No. 1-4).

Sanchez Lopez remains in ICE custody at the McCook Detention Center. (Filing No. 1 at 7, 9; Filing No. 1-2 at 1). He filed his Petition for a Writ of Habeas Corpus on November 24, 2025 seeking release from custody, or in the alternative, an order directing the immigration court to

---

[1] ICE lodged a detainer with the Hall County Department of Corrections prior to arresting Sanchez Lopez. (Filing No. 1 at 10). ICE "encountered" him there on October 1, 2025 "during routine jail checks." (Filing No. 1-5 at 3).

schedule a bond hearing. (Filing No. 1). The Court directed Sanchez Lopez to serve his petition on the respondents (Filing No. 10) and ordered the respondents to file a return on the petition within three business days of service showing cause why the petition should not be granted. The Federal Respondents[2] did so (Filing No. 17) and Sanchez Lopez filed his reply (Filing No. 21). For his part, Director Jeffreys "does not take a position on the substantive issues raised in the Petition, nor does [he] take a position on whether Petitioner's writ should or should not be granted." (Filing No. 23 at 2). The parties agreed to waive a hearing on Sanchez Lopez's petition and the Court deemed the matter submitted on the written arguments.

## STANDARD OF REVIEW

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). District courts may grant writs of habeas corpus. 28 U.S.C. § 2241(a). The Court's jurisdiction to hear habeas challenges extends to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Sanchez Lopez bears the burden to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## DISCUSSION

The Court has previously concluded that a noncitizen who was present within the United States at the time he was detained is entitled to a bond hearing. *See Sales Ambrocio v. Noem et al.*, 2025 WL 3295530, at *6 (D. Neb. Nov. 25, 2025). It reaches the same conclusion here based on its interpretation of the statutory detention framework at issue.

To implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering. *Jennings*, 583 U.S. at 285. "That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether a noncitizen seeking to enter the country is admissible." *Id.* Under 8 U.S.C. § 1225, a noncitizen who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." *Id.* § 1225(a)(1).

---

[2] The Federal Respondents include "all but [NDCS Director] Rob Jeffreys[.]" (Filing No. 17 at 3 n.1).

Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. *Id.* § 1225(a)(3).

Applicants for admission fall into either of two categories—one covered by § 1225(b)(1) and one covered by § 1225(b)(2). Section 1225(b)(1) applies to an alien "who is arriving in the United States," § 1225(b)(1)(A)(i), or, subject to the discretion of the Attorney General, "has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph," § 1225(b)(1)(A)(iii). Section 1225(b)(2), by contrast, "is broader" and generally "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.* Noncitizens covered by Section 1225(b)(2) are not eligible for bond during the pendency of removal proceedings. *See* § 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [removal proceedings]."); *Jennings,* 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

8 U.S.C. § 1226, by contrast, "generally governs the process of arresting and detaining" noncitizens found within the United States "pending their removal." *Jennings,* 583 U.S. at 288. Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (quoting § 1226(a)). And except as provided in § 1226(c),[3] the Attorney General "may release" a noncitizen detained under § 1226(a) "on . . . bond" or "conditional parole." *Id.* Federal

---

[3] Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1). The Attorney General may release noncitizens in those categories "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(c)(2).

regulations provide that noncitizens detained under § 1226(a) receive bond hearings at the outset of detention. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

In sum, "U.S. immigration law authorizes the Government to detain certain *aliens seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings,* 583 U.S. at 289 (emphasis added). The issue here is which provision applies to Sanchez Lopez. He says § 1226(a) and asserts he is entitled to a bond hearing. The Federal Respondents say § 1225(b)(2) and assert he is not entitled to a bond hearing.

When interpreting a statute, the Court "begin[s] with the text." *Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 806 (8th Cir. 2021). But "[t]he definition of words in isolation . . . is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities." *Id.* (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)). When interpreting a statute, the Court must also consider the statutory context in which the words in question appear, including both "the specific context in which th[e] language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997)).

Applying those principles here, the Court concludes that Sanchez Lopez is detained under § 1226(a). Recall that the Supreme Court characterized § 1225 and § 1226 as establishing two tracks—one that applies to noncitizens "seeking admission into the country" and one that applies to noncitizens "already in the country." *Jennings,* 583 U.S. at 289. Sanchez Lopez falls within the latter track. *Cf. Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between [a noncitizen] who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

Sanchez Lopez is, without doubt, an "applicant for admission" under § 1225(a)(1). But because he entered the country over thirteen years ago and has lived here since, the Court cannot say that he was also "seeking admission" when he was detained by ICE. There must be a distinction between the two terms. *See Alvarez Ortiz v. Freden*, 2025 WL 3085032, at *7 (W.D.N.Y. Nov. 4, 2025) ("As numerous courts have observed, if all 'applicant[s] for admission' also are 'seeking admission,' then the words 'seeking admission' would be surplusage.") (collecting cases). "Seeking admission" has no statutory definition, so it takes its plain meaning. *Padilla v. Galovich*

*et al.,* 2025 WL 3251446, at *4 (W.D. Wis. Nov. 21, 2025). By that plain meaning, "seeking" implies action, and noncitizens like Sanchez Lopez "who have been present in the country for years are not actively 'seeking admission.'" *Beltran Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025); *Belsai D.S. v. Bondi*, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025) ("One who is 'seeking admission' is presently attempting to gain admission into the United States."); *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("'[S]eeking admission' . . . implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

Nor does it appear that an immigration officer determined that Sanchez Lopez was "not clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A). It is also notable that Sanchez Lopez's Notice to Appear did not designate him as an "arriving alien," which is "the language used to define the scope of § 1225(b)(2)(A) in the implementing regulations." *Ochoa Ochoa v. Noem*, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see* 8 C.F.R. § 235.3(c)(1).

Summed up, Section 1225(b)(2), by its plain terms, only applies in the case of "an alien seeking admission." Having lived in the United States for years before being detained, Sanchez Lopez was not "seeking admission" here, so § 1225(b)(2) does not apply to him.

Taken to its logical conclusion, the Federal Respondents' reading of § 1225(b)(2)(A) would mean that it applies to all noncitizens present in the United States who have not been admitted. That cannot be. First, the Federal Respondents' arguments run headlong into *Jennings* and its language characterizing § 1226(a) as applying to "aliens already in the country," like Sanchez Lopez was upon his arrest. Nor is the Court persuaded that both § 1225(b)(2) and § 1226(a) "overlap" such that they could apply to one noncitizen at the same time. As then-Attorney General Bill Barr explained, "section [1225] (under which detention is mandatory) and section [1226(a)] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens." *Matter of M-S-,* 27 I. & N. Dec. 509, 516 (2019); *see also Hernandez Marcelo v. Trump*, 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) ("The correct distinction when assessing detention pending removal lies between those located in the United States and those located outside the United States.").

6

Further, the Federal Respondents' interpretation would render "recent congressional enactments superfluous." *Giron Reyes v. Lyons*, 2025 WL 2712427, at *5 (N.D. Iowa Sept. 23, 2025). Enacted earlier this year, the Laken Riley Act amended § 1226 by adding § 1226(c)(1)(E), which mandates detention for noncitizens who are inadmissible under §§ 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Sanchez Lopez), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) and have been arrested for, charged with, or convicted of certain crimes. § 1226(c)(1)(E)(i)–(ii). Because § 1182(a)(6)(A)(i) specifically refers to noncitizens "present in the United States without being admitted or paroled," and § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed certain enumerated crimes, the recently created statutory exception would be redundant if § 1225(b)(2) also authorized their detention. "That is, because an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted,' ICE would never need to rely on § 1226(c)(1)(E) to detain them." *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025). Statutes should be read to avoid making any provision "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) Adopting the Federal Respondents' interpretation would do just that. Therefore, their interpretation is untenable.

Finally, based on the language of the statute itself, the most natural interpretation of § 1225 is that it applies to noncitizens encountered as they are attempting to enter the United States or shortly after they gained entry without inspection. Start with the title: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added); *Chernin v. United States*, 149 F.3d 805, 816 (8th Cir. 1998) ("[I]t is instructive to turn to the title of the statute to aid in resolving textual ambiguity."). Elsewhere too, Section 1225 "repeatedly refers to aliens entering the country." *Lopez v. Sheehan*, 2025 WL 3046183, at *4 (N.D. Iowa Oct. 30, 2025); *see* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (noncitizens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further addresses "crewm[e]n" and "stowaway[s]" in Section 1225(b)(2)(B). In short,

Section 1225's text suggests it was "set up with arriving aliens in mind." *Lopez,* 2025 WL 3046183, at *4.

The Court recognizes that the Board of Immigration Appeals reached the opposite conclusion in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). But the Court is not bound by that decision. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024). Nor does the Court find it particularly persuasive, especially given that it represents a departure from longstanding agency practice. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997) ("Aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Indeed, "[f]or almost three decades, most noncitizens who entered without inspection that were placed in standard removal proceedings received bond hearings, unless subject to an exception." *Pizzaro Reyes,* 2025 WL 2609425, at *8.

The Court, in accordance with the "overwhelming majority" of district courts to consider this issue, therefore concludes that § 1226(a), not § 1225(b), applies to a noncitizen like Sanchez Lopez who is detained within the United States. *Barrajas v. Noem*, 2025 WL 2717650, at *4 (S.D. Iowa Sept. 23, 2025) (collecting cases). Thus, Sanchez Lopez's detention without a bond hearing is unlawful.

Sanchez Lopez also argues that his arrest and detention without a warrant violates his Fifth Amendment right to due process. (Filing No. 21 at 10). The Court need not reach the constitutional issues here because it will grant Sanchez Lopez the relief he seeks, in part, based on its determination that § 1226(a) applies to him. If the Court were to reach Sanchez Lopez's constitutional claim on this record, it has some doubt as to whether he could prevail. As the Supreme Court recognized in *Jennings,* "Section 1226(a) creates a default rule for those aliens [already present in the United States] by permitting—*but not requiring*—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." 583 U.S. at 303 (emphasis added). Sanchez Lopez has not explained how the Federal Respondents' failure to issue a warrant violates due process when they are not "requir[ed]" to do so in the first place. That said, if the Federal Respondents do not provide Sanchez Lopez with a bond hearing or release him within the time allotted, he may renew his Fifth Amendment Due Process claim.

Just one issue[4] remains—the proper remedy. Sanchez Lopez seeks either his release from custody or an order directing the immigration court to give him a bond hearing. (Filing No. 1 at 22). Only the latter is appropriate here. The unlawful aspect of Sanchez Lopez's detention is the fact that he is entitled to a bond hearing but has not received one. His detention itself, however, is discretionary. *See* § 1226(a); *Ochoa Ochoa,* 2025 WL 2938779, at *8. To remedy the unlawful aspect of Sanchez Lopez's detention, the Court will order that the Federal Respondents provide him with a bond hearing pursuant to § 1226(a) and 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Accordingly,

**IT IS ORDERED:**

1. Petitioner Jimmy Ivan Sanchez Lopez's Petition for a Writ of Habeas Corpus (Filing No. 1) is granted in part and denied in part, as set forth above.

2. The Federal Respondents shall provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) and the corresponding regulations within ten days of this order.

3. If the Federal Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required by this Order, Petitioner must be immediately released from detention.

4. Within fourteen days of the date of this Order, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release.

5. A separate judgment will be entered.

Dated this 9th day of December, 2025.

BY THE COURT:

Susan M. Bazis
United States District Judge

---

[4] As to Sanchez Lopez's request for attorney's fees and costs under the Equal Access to Justice Act (Filing No. 1 at 22), he may move separately within thirty days of final judgment in this action to recover them. *See* 28 U.S.C. § 2412(d); 5 U.S.C. § 504.